# EXHIBIT A

## Relevant Responses to Plaintiff's First Interrogatories

Marc Cleere — Interrogatories Nos. 5 and 9

Winsupply NE San Antonio TX Co. — Interrogatories Nos. 6 and 7

Winsupply Inc. — Interrogatories Nos. 4–6

his former employer in their individual capacities, defense counsel representing his former employer, and in-house and outside counsel representing his former employer in the earlier cases that Mr. Blair filed. Mr. Blair even had named a sitting United States District Judge as a defendant to his mandamus action in the Fifth Circuit. Mr. Blair sought class action status in the U.S. Northern District Court of Illinois and asserted constitutional violations in two cases in the U.S. District Court of the District of Columbia. All of these cases have been dismissed, and Mr. Blair has received nothing. Defendant also refers Plaintiff to the documents produced.

**INTERROGATORY NO. 4:**
Identify every person or entity to whom you directly or indirectly transmitted, forwarded, summarized, discussed, described, or otherwise communicated Plaintiff's January 15, 2026 termination letter, or the substance thereof.

**RESPONSE:**
None.

**INTERROGATORY NO. 5:**
State whether you communicated with any employee, officer, representative, agent, or contractor of Milford concerning Plaintiff from January 1, 2026 to present, and if so identify all such persons, dates, and subject matter.

**RESPONSE:**
Defendant, in the course and scope of his employment with Winsupply NE San Antonio TX Co spoke with Michael Harris requesting Harris to accompany Defendant to 5F Mechanical as Plaintiff was no longer available to assist with this customer due to his termination.

**INTERROGATORY NO. 6:**
State whether you contend that Plaintiff's prior litigation with Ferguson Enterprises involved any "contractors" connected to your business, and if so identify each such contractor and explain the basis for that contention

**RESPONSE:**
Defendant does not have knowledge as to whether Plaintiff's prior litigation with Ferguson Enterprises involved any "contractors" connected to his business.

**INTERROGATORY NO. 7:**
State whether, before or after Plaintiff's termination, you communicated with any employee, officer, representative, agent, or contractor of Aquatherm concerning Plaintiff's prior litigation

history, complaints, performance, or employment status, and if so identify all such persons, dates, and subject matter.

**RESPONSE:**
Defendant, in the course and scope of his employment with Winsupply NE San Antonio TX Co spoke with Aquatherm's Vice President of Sales, Michael Segala on or about September 29, 2025. At that time, Mr. Segala informed Defendant of a post made by Plaintiff on LinkedIn concerning litigation initiated by Plaintiff against his prior employer.

**INTERROGATORY NO. 8:**
Identify every occasion during Plaintiff's employment in which You made any comment, statement, joke, gesture, or physical act concerning Plaintiff's body, masculinity, genitals, sexual conduct, or physical appearance, and identify the date, location, persons present, and substance of each.

**RESPONSE:**
None.

**INTERROGATORY NO. 9:**
Describe in complete detail your relationship with Michael Harris, including when and how you first became acquainted, your understanding of his role with Milford, and every communication between you and Michael Harris concerning Plaintiff from January 1, 2026 to the present, including the date, method, and general subject matter of each communication.

**RESPONSE:**
Defendant objects to this interrogatory because it is overbroad and unduly burdensome in that it requires Defendant to "Describe in complete detail" Defendant's relationship with Michael Harris. This interrogatory overbroad and unduly burdensome because the level of detail demanded would require an exhaustive, all-inclusive recitation that is impermissibly expansive and would require Defendant to compile and narrate an unreasonable volume of information without any temporal, topical, or substantive limitation. The demand for "complete detail" imposes a standard of comprehensiveness that exceeds the disclosure obligations imposed by Rule 33 and Rule 26(b), which require only that responses be proportional to the needs of the case and that Defendant provide the material facts regarding Defendant's relationship with Michael Harris, not every conceivable detail, minor circumstance, or tangential consideration.

Subject to the foregoing objections, Mr. Harris is a business acquaintance of Defendant. Defendant refers Plaintiff to documents produced to Plaintiff by the parties in this litigation.

made in Plaintiff's January 15, 2026 termination letter concerning Plaintiff's prior litigation history, including identification of all documents and persons relied upon." This interrogatory is overbroad and unduly burdensome because the level of detail demanded would require an exhaustive, all-inclusive recitation that is impermissibly expansive and would require Defendant to compile and narrate an unreasonable volume of information without any temporal or substantive limitation. The demand for "with specificity" imposes a standard of comprehensiveness that exceeds the disclosure obligations imposed by Rule 33 and Rule 26(b), which require only that responses be proportional to the needs of the case and that Defendant provide the material facts supporting its employment decision, not every conceivable detail, minor circumstance, or tangential consideration.

Defendant objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection. Defendant will withhold any such information and will provide a privilege log to the extent required by Fed. R. Civ. P. 26(b)(5). Defendant asserts the attorney-client privilege to the extent information sought through this interrogatory seeking documents, communications, and persons Defendant relied upon in terminating Plaintiff's employment from Winsupply NE San Antonio TX Co. Plaintiff has not specifically stated that Plaintiff does not seek information protected by the attorney-client privilege or attorney work-product doctrine.

Subject to the foregoing objections and without waiving same, Defendant refers Plaintiff to its document production, which includes the termination notice and references numerous court cases that Plaintiff filed against his former employer, which filings are all accessible as publicly available records.

**INTERROGATORY NO. 5:** Identify every person or entity to whom Plaintiff's January 15, 2026 termination letter, or any summary or substance of its contents, was directly or indirectly transmitted, communicated, summarized, described, discussed, or disclosed by any employee, officer, director, agent, or representative of Defendant

**RESPONSE:** None.

**INTERROGATORY NO. 6:** Identify every person who communicated to any third party, customer, contractor, vendor, manufacturer, distributor, or project participant any statement concerning Plaintiff's termination, litigation history, or alleged "legal issues" from January 15, 2026 to present.

**RESPONSE:** None.

**<u>INTERROGATORY NO. 7:</u>** Identify all communications between Defendant and Milford, or any employee, officer, representative, agent, or contractor thereof, concerning Plaintiff from January 1, 2026 to present.

> **<u>RESPONSE:</u>** Following Plaintiff's termination, Marc Cleere spoke with Michael Harris requesting Harris accompany him to 5F Mechanical as Plaintiff was no longer employed to assist with this customer.

**<u>INTERROGATORY NO. 8:</u>** Identify all communications between Defendant and any employee, officer, representative, agent, or contractor of Aquatherm concerning Plaintiff from August 1, 2025 to present, including any communications concerning Plaintiff's prior litigation history, complaints, performance, or employment status.

> **<u>RESPONSE:</u>** Marc Cleere spoke with Aquatherm's Vice President of Sales, Michael Segala on or about September 29, 2025. At that time, Mr. Segala informed Mr. Cleere of a public post made by Plaintiff on LinkedIn concerning litigation initiated by Plaintiff against his prior employer.

**<u>INTERROGATORY NO. 9:</u>** Identify all customers, contractors, manufacturers, distributors, and project participants known to Defendant with whom Plaintiff maintained active business contact during his employment.

> **<u>RESPONSE:</u>** Defendant objects as the term "active business contact" is vague and ambiguous because it is susceptible to multiple meanings, rendering this interrogatory insufficient to state with reasonable particularity what information is sought. Subject to the foregoing objection and without waiving same, to the best of Defendant's knowledge, the only "active business contacts" Plaintiff maintained were with Milford, Aquatherm, and 5F Mechanical.

**<u>INTERROGATORY NO. 10:</u>** State whether Defendant contends that Plaintiff's termination decision was under consideration before January 12, 2026, and if so, state the date such consideration began, all persons involved, and all reasons supporting such contention.

> **<u>RESPONSE:</u>** In October of 2025, Marc Cleere, Defendant's President, began contemplating Plaintiff's future with the company because Plaintiff's job performance, and work ethics were not aligning with Defendant's expectations. The decision to terminate was made because Mr. Blair had filed 9 cases in three different jurisdictions across the country, against defendants ranging from multiple entities affiliated with his former employer, numerous employees of his former employer in their individual capacities, defense counsel representing his former employer, and in-house and outside counsel representing his former employer in the earlier cases that Mr. Blair filed. Mr. Blair even had named a sitting United States District Judge as a defendant to his mandamus action in

**DEFENDANT WINSUPPLY INC.'S ANSWERS AND/OR OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**
Identify all ownership interests held by Defendant in Winsupply NE San Antonio TX Co. from January 1, 2025 to present, including percentage ownership and voting rights.

> **RESPONSE:**
> Defendant objects as this request is not reasonably calculated to lead to the discovery of admissible evidence as it seeks irrelevant information considering the claims at bar. Defendant further objects as this request is ambiguous as it does not identify with reasonable particularity whether "voting rights" refers to a vote of the board or a vote of the shareholders. Subject to the foregoing objections and without waiving same, there are 5000 total shares. Marc Cleere has 145 shares, Winsupply, Inc. has 4,845 shares, and Victoria Ybarra has 10 shares. There is one voting share, and it is owned by Winsupply, Inc.

**INTERROGATORY NO. 2:**
Identify every officer, director, board member, manager, or representative of Defendant who held any direct or indirect governance, board, oversight, advisory, managerial, or decision-making role concerning Winsupply NE San Antonio TX Co. from January 1, 2025 to present.

> **RESPONSE:**
> Rob Ferguson, Mike Atwell, and Roger Lewis sit on the Board of Winsupply NE San Antonio TX Co. They did not make any of the decisions regarding Mr. Blair's employment status.

**INTERROGATORY NO. 3:**
Describe in detail Defendant's role, if any, in processing Plaintiff's payroll, compensation, bonuses, benefits, W-2 issuance, expense reimbursements, and tax reporting.

> **RESPONSE:**
> Defendant did not have any role in this process. Wholesalers People Services LLC, a subsidiary of Winsupply Inc., processed Plaintiff's payroll, compensation, bonuses, benefits, W-2 issuance, expense reimbursements, and tax reporting for Winsupply NE San Antonio TX Co.

**INTERROGATORY NO. 4:**
Identify all communications between Defendant and Marc Cleere concerning Plaintiff from January 10, 2026 through January 15, 2026.

**RESPONSE:**
Defendant asserts the attorney-client privilege and the work product doctrine to this interrogatory because it can be construed to seek privileged information in its description regarding "all communications between Defendant and Marc Cleere concerning Plaintiff from January 10, 2026 through January 15, 2026…." Plaintiff has not asserted that Plaintiff does not seek documents and information protected by the attorney-client privilege or the work product doctrine. Defendant will not produce privileged or protected information and is withholding attorney-client communications.

Subject to and without waiving these objections, no representative of Defendant in their capacity as employees had communications with Defendant Cleere. Two members of the Winsupply NE San Antonio Tx Co Board of Directors (Roger Lewis and Rob Ferguson) spoke with Defendant Cleere in their capacity as members of the Winsupply NE San Antonio Tx Co Board of Directors after Lewis and Ferguson received Plaintiff's January 12, 2026 letter.

**INTERROGATORY NO. 5:**
Identify all communications between Defendant and Roger Lewis concerning Plaintiff from January 10, 2026 through January 15, 2026.

**RESPONSE:**
Defendant asserts the attorney-client privilege and the work product doctrine to this interrogatory because it can be construed to seek such privileged information in its description regarding "all communications between Defendant and Roger Lewis concerning Plaintiff from January 10, 2026 through January 15, 2026…." Plaintiff has not asserted that Plaintiff does not seek documents and information protected by the attorney-client privilege or the work product doctrine. Defendant will not produce privileged or protected information and is withholding attorney-client communications.

Subject to and without waiving these objections, no representative of Defendant in their capacity as employees had non-privileged communications with Roger Lewis concerning Plaintiff from January 10, 2026 through January 15, 2026.

**INTERROGATORY NO. 6:**
Identify all communications between Defendant and Rob Ferguson concerning Plaintiff from January 10, 2026 through January 15, 2026.

**RESPONSE:**
Defendant asserts the attorney-client privilege and the work product doctrine to this interrogatory because it can be construed to seek such privileged information in its description regarding "all communications between Defendant and Rob Ferguson concerning Plaintiff from January 10, 2026 through January 15, 2026…." Plaintiff has not asserted that Plaintiff does not seek documents and information protected by the attorney-

client privilege or the work product doctrine. Defendant will not produce privileged or protected information and is withholding attorney-client communications.

Subject to and without waiving these objections, no representative of Defendant in their capacity as employees had non-privileged communications with Rob Ferguson concerning Plaintiff from January 10, 2026 through January 15, 2026.

**INTERROGATORY NO. 7:**
State whether Defendant directly or indirectly participated in, reviewed, approved, authorized, or discussed Plaintiff's termination, and if so identify all persons involved and all actions taken.

**RESPONSE:**
Defendant did not participate in, review, approve, authorize, or discuss Plaintiff's termination from employment with Winsupply NE San Antonio TX Co.

**INTERROGATORY NO. 8:**
State whether Defendant maintains any written policies, directives, or authority governing post-termination communications between former employees and any Winsupply-affiliated entities, and if so identify them.

**RESPONSE:**
Defendant objects to this request as it is overbroad in both time and scope and is not reasonably calculated to lead to the discovery of admissible evidence as it seeks irrelevant information in that it seeks policies directives or authority governing post-termination communications of this Defendant which was not Plaintiff's employer and which did not apply to Plaintiff. Subject to the foregoing objections and without waiving same, Defendant does not maintain any policies which are applicable to any employees other than any direct employees of Winsupply, Inc. Winsupply NE San Antonio TX Co. has a policy governing information that can be shared about former employees. No one at Winsupply NE San Antonio TX Co., nor Winsupply Inc. violated that policy with respect to Plaintiff.

**INTERROGATORY NO. 9:**
Identify every person employed by Defendant who had knowledge of Plaintiff's January 12, 2026 escalation letter, complaints, concerns, or any proposed meeting concerning Plaintiff before Plaintiff's termination.

**RESPONSE:**
Roger Lewis and Rob Ferguson, employees of Defendant and some board members of Winsupply NE San Antonio TX Co., knew of the January 12, 2026 letter, the complaints and concerns stated in the letter, and the meeting scheduled between Marc Cleere and Plaintiff, however neither Mr. Lewis nor Mr. Ferguson took any actions in their respective capacities with respect to Plaintiff's employment status.