**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RONALD A. BLAIR,** Plaintiff, | § § § § | |
| **v.** | § | Civil Action No. 1:26-cv-01216-RP |
| **WINSUPPLY NE SAN ANTONIO TX CO.; WINSUPPLY INC.;** and **MARC CLEERE, Individually,** Defendants**.** | § § § § § § § | |

**PLAINTIFF'S MOTION TO COMPEL COMMUNICATIONS AND GOVERNANCE PRODUCTION AND ESTABLISH COMPLIANCE DATES**

**INTRODUCTION AND REQUESTED RELIEF**

1. Plaintiff moves under Rules 34 and 37(a) to compel communications and governance production and establish the compliance dates specified below. Although Defendants have produced documents, Plaintiff has not identified in those productions any responsive email, text-message, or other messaging exchange among Defendants or with the third parties specified in the communications requests served June 22, 2026. Blair Decl. ¶ 8.

## I. DISCOVERY HISTORY AND THE REMAINING DISPUTES

2. "NE" means Winsupply NE San Antonio TX Co.; "Inc." means Winsupply Inc. Exhibit A supplies the chronology. "Record" cites the preserved printed page labels in Exhibits B–D; omitted duplicate email pages create numbering gaps. "Policy Record" cites Exhibit E; Exhibit F uses its own printed pages. Defendants served first-set responses and production July 22, describing production as ongoing. Plaintiff requested completion or a reasonable

alternative schedule August 8. Ex. F, pp. 8–9; Exs. C04, Record pp. 29–31; D4–D6, pp. 90–102.

3. On August 21, Garza described review through a third-party vendor and referred to the March 2027 discovery cutoff. His September 3 proposal specified an initial October 1 production. Plaintiff declined the proposal; Garza offered further discussion that evening. No completion date was agreed. Ex. F, pp. 14–15, 25–26, 29–30, 51; Ex. C11, Record pp. 39–40.
4. On September 5, Plaintiff asked when vendor and attorney review would finish, whether October 1 meant initial or completed production, and which requests depended on that work. Plaintiff requested further conferral September 17. Garza reported travel through September 29 and proposed October 1, when the parties conferred. Ex. C14, Record p. 46; Ex. F, pp. 33–35.
5. Plaintiff's same-day October 1 account records Garza's explanation that production had been put on hold because the proposed agreement was not finalized. Counsel committed to October 6 supplementation, which Garza anticipated would address most identified deficiencies. He identified October 31 as a communications target that Mardon qualified as potentially a substantial batch rather than completion. Plaintiff also asked when the vendor began its work; Garza described the work as ongoing without identifying a start date. Blair Decl. ¶ 4. Plaintiff requested clarification or correction of the asserted hold on October 2 and received no written response addressing that request. No completion date was agreed. Ex. F, pp. 37–40; Blair Decl. ¶ 4.
6. Defendants supplemented responses and production October 6. Plaintiff credits that production. His October 7 letter identified remaining issues. Ex. F, pp. 41, 43; Ex. C20, Record pp. 54–59.

7. During the October 15 conference, Plaintiff repeatedly requested a definite completion date for the ongoing ESI review and communications production. Counsel declined to provide one, referring to supplementation when ready and the continuing discovery period. The discussion included emails, text messages, messaging applications, and calendar entries. Ex. F, pp. 45–47; Ex. C23, Record pp. 66, 71; Blair Decl. ¶ 5.
8. Plaintiff's account and notes record undated reconsideration of Inc. RFP 1 and maintained objections to RFP 2. Ex. F, pp. 44–45; Ex. C23, Record pp. 65–66; Blair Decl. ¶ 6. At 3:50 p.m. Central October 19, Mardon responded in the separate search-coverage thread. She explained the significant ongoing review, described the searches as relevant and proportional, asked Plaintiff to await supplementation, and renewed conditional promises to produce nonprivileged ownership instruments and Board records. Ex. F, pp. 69–70. Plaintiff acknowledged the response at 5:04 p.m. and identified unresolved timing and governance issues. Ex. F, pp. 75–76. At 5:25 p.m., Mardon disputed his characterization and stated that counsel had said on October 1 that they intended a supplemental production at the end of October, with possible further supplementation afterward. Ex. F, p. 82. Plaintiff credits that installment target; it does not identify when the requested production will be complete.
9. The September 14 order denied sequencing for lack of good cause and failure to satisfy the prefiling conference requirement. It required meaningful two-way conferral and a detailed explanation of unsuccessful resolution efforts. Dkt. 32 at 1–2. This motion seeks Defendants' production without postponing Plaintiff's obligations. Plaintiff served responses September 4 and supplemental responses and materials October 15, the deadline set in Dkt. 32. He did so independently of Defendants' production. Ex. F, pp. 32, 48–49. The conference certification identifies the discussions, proposals, and reasons agreement failed.

## II GOVERNING STANDARDS

10. Rule 26(b)(1) permits relevant, proportional discovery. Rule 34(b)(2)(B) requires production by the requested inspection time or another reasonable time specified in the response; its 2015 committee note calls for beginning and end dates for staged production. Rule 34(b)(2)(C) requires disclosure of whether an objection withholds responsive material. Rule 26(e) supplementation does not supply a present completion date. Rules 37(a)(3)(B)(iv) and 37(a)(4) authorize relief for incomplete production. The March 15, 2027 discovery cutoff is not a response-specific production schedule. Dkt. 31 at 2 ¶ 7. Rule 37(a)(1), Local Rule CV-7(g), and Dkt. 32 require good-faith conferral.

11. A resisting party must explain specifically why the particular request is objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Plaintiff seeks existing, responsive records within each Defendant's possession, custody, or control. The relief does not require disclosure of privileged or protected substance. Privilege withholding must be adequately described under Rule 26(b)(5)(A).

## III COMPLETE THE PROMISED COMMUNICATIONS PRODUCTION

12. These requests concern the January complaint and termination, alleged decision-makers, and communications about Plaintiff to third parties. Completion informs additional discovery and follow-up concerning decision chronology, employment authority, and third-party publication. Plaintiff's correspondence cannot supply communications among Defendants or with others. Each request's served subjects and time limits remain unchanged. Paragraph 24 states the common relief.

13. Cleere RFP 1 seeks January 10–15, 2026 communications concerning Plaintiff, including the specified electronic categories. Cleere's October 6 response retains the messaging-app

objection and promises production, if any, in the usual course of business without a completion date. Exs. D1, Record pp. 74–76; D7, p. 105.

14. Cleere RFP 3 seeks Cleere–Milford communications concerning Plaintiff from January 1, 2026 to present. The October 6 response promises future production. Plaintiff credits the supplemented answer identifying Harris contact; a narrative account of a conversation does not complete document production. Exs. D1, Record p. 76; D7, pp. 105–106; B3, p. 12.
15. Cleere RFP 4 seeks Cleere–Aquatherm communications concerning Plaintiff from August 1, 2025 to present. The October 6 response promises production without a date. The supplemented narrative answer identifying the Segala discussion supports relevance without establishing that written records exist. Exs. D1, Record p. 76; D7, p. 106; B3, p. 11.
16. NE RFP 1 seeks January 10–15, 2026 communications concerning Plaintiff's specified employment events. NE's October 6 response retains the messaging-app objection and an undated production promise. Exs. D2, Record pp. 79–81; D8, p. 109.
17. NE RFP 3 seeks January 10–15, 2026 communications concerning Plaintiff with Cleere, Lewis, Ferguson, or Inc. representatives. NE's October 6 response retains privilege objections and promises nonprivileged production without a date. Exs. D2, Record p. 81; D8, pp. 109–110.
18. NE RFP 4 seeks NE–Milford communications concerning Plaintiff from January 1, 2026 to present. The October 6 response repeats its undated production promise. NE's production obligation is distinct from Cleere's. Exs. D2, Record p. 81; D8, p. 110.
19. NE RFP 5 seeks communications with customers, contractors, vendors, distributors, manufacturers, or project participants concerning Plaintiff's termination, litigation history, or

legal issues from January 15, 2026 to present. NE's October 6 response promises future production without a date. Exs. D2, Record p. 81; D8, p. 110.

20. Inc. RFP 3 seeks January 10–15, 2026 Inc.–Cleere communications concerning Plaintiff. Inc. asserts privilege and promises nonprivileged production. Inc.'s October 6 response provides no completion date. Exs. D3, Record p. 87; D9, p. 114.

21. Inc. RFP 5 seeks communications between Inc. and Lewis concerning Plaintiff from January 10–15, 2026. Inc.'s October 6 response corrects the name in its response from Cleere to Lewis; that correction does not complete its conditional production promise. Exs. D3, Record p. 87; D9, p. 115.

22. Inc. RFP 6 seeks communications between Inc. and Ferguson concerning Plaintiff from January 10–15, 2026. Inc.'s October 6 response corrects the name from Cleere to Ferguson while retaining its production promise and privilege position. Exs. D3, Record p. 87; D9, p. 115; B2, Record pp. 5–7.

23. The common issue is completion of the production undertaken in the responses, without a definite date. Plaintiff credits prior production, supplemented answers, and privilege descriptions, including Inc.'s narrative account of telephone communications and denial of other nonprivileged communications then identified. Neither that account nor a promise to supplement proves additional records exist; the October 15 account describes continuing ESI review. Ex. B2, Record pp. 5–7; Ex. F, pp. 45–47; Blair Decl. ¶ 5.

24. For each request above, Plaintiff seeks completion of the promised nonprivileged production and a signed supplemental Rule 34 response stating whether that production is complete and whether responsive material is withheld on an objection, with required privilege descriptions. If reasonable inquiry locates no additional responsive nonprivileged records, the response

may so state. This timing request does not adjudicate preserved communications-scope, source, or format objections or search methodology. Valid privilege and Rule 26(e) supplementation remain protected.

## IV COMPEL THE OWNERSHIP AND EMPLOYMENT-RELATED BOARD RECORDS

25. Inc. RFP 1 requests documents reflecting its ownership interests in NE from January 1, 2025 to present, expressly including stock ownership records, shareholder agreements, voting agreements, and governance documents. RFP 2 requests Board and governance records, minutes, resolutions, and Board communications concerning Plaintiff's employment, compensation, complaints, reassignment, retention, or termination over that period. Ex. D3, Record p. 87. Inc.'s October responses repeat the July objections: vagueness, breadth, burden, proportionality, and insufficiently identified custodians or categories, followed by conditional production promises. Exs. D6, Record pp. 100–101; D9, pp. 113–114.

26. Inc. identifies 4,845 of NE's 5,000 shares and the sole voting share, names Lewis, Ferguson, and Atwell as NE Board members, and denies involvement in termination. Ex. B2, Record pp. 5, 7. NE describes counsel's investigation and reporting to its Board; the log identifies a January 23 report. Exs. B4, Record pp. 16–17; B6, p. 20. Cleere says changes to relevant employment policies required NE Board approval. Ex. E3, Policy Record p. 14. These answers support examination of authority without proving liability, control of every NE record, or absence of privilege.

27. *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983), identifies interrelated operations, centralized labor control, common management, and common ownership or financial control as factors in integrated-enterprise analysis, emphasizing employment decisions. Common ownership and management alone are insufficient. *Lusk v. Foxmeyer*

*Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). The requested instruments and employment-specific records permit examination of actual authority and participation beyond the admitted share count. Plaintiff seeks evidence to test these matters, not an employer-status ruling on this motion.

**Inc. RFP 1—Ownership and voting instruments**

28. RFP 1 identifies one ownership relationship, a start date, and concrete categories. Plaintiff seeks stock records, shareholder and voting agreements, and governance instruments reflecting Inc.'s ownership interests and associated rights in NE. The share-count answer does not supply those instruments. Inc.'s responses identify no particular volume, cost, or search burden outweighing relevance or explain why unnamed custodians prevent identification. *See Ambler v. Nissen*, No. 1:20-cv-01068-LY, Dkt. 155, at 4–5 (W.D. Tex. Jan. 26, 2023) (rejecting the burden showing for specified responsive records within the defendant's possession, custody, or control). The Court should overrule the stated objections only as applied to this scope and compel records not already produced.

**Inc. RFP 2—Employment-related Board records**

29. RFP 2 concerns one person and specified employment events. Plaintiff seeks existing Board records, minutes, resolutions, communications, and governance records addressing those events. Inc. identifies no specific disproportionate burden. The Court should overrule the stated objections as applied to this scope and compel responsive nonprivileged records within Inc.'s possession, custody, or control. No order is sought against a nonparty or based solely on Inc.'s ownership of NE.

30. Plaintiff corrects his October 7 statement that RFPs 1–2 received no supplemental response. The October 6 responses repeated the objections and conditional production promises. The

October 7 letter reports that Plaintiff had not identified responsive ownership or voting instruments or employment-related Board records; it does not establish that such records exist. Exs. C20, Record p. 55; D9, pp. 113–114. The requested order credits records already produced and permits a response stating that reasonable inquiry located no additional nonprivileged records.

31. At the October 15 conference, Plaintiff explained relevance; Inc. offered undated reconsideration of RFP 1 and maintained its position on RFP 2. Ex. F, pp. 44–45; Ex. C23, Record pp. 65–66; Blair Decl. ¶ 6. Mardon's October 19 production promise remained subject to objections. Neither her 3:50 p.m. response nor her 5:25 p.m. statement of a month-end installment target clarified whether those objections withhold responsive governance material. Ex. F, pp. 70, 82. Plaintiff seeks resolution of those objections and scheduled governance production. The January 23 logged report remains subject to valid privilege; its existence does not establish that additional nonprivileged Board records exist. Ex. B6, Record p. 20.

**V Requested relief**

32. Plaintiff requests reviewed, ready material within seven days after entry; production and signed supplemental Rule 34 responses within twenty-one days; and any necessary Rule 26(b)(5)(A) descriptions by the same completion date. Rule 26(g) governs the response signature. The deadline includes covered material still pending vendor or attorney review, subject to the limits above. It does not require production of nonexistent records or duplicate prior production.

33. Nearly four months after service of the first-set requests, completion remains undated. Ex. F, pp. 5–6; Blair Decl. ¶¶ 5, 7. Plaintiff has additional discovery to conduct, as well as follow-

up discovery. Blair Decl. ¶ 8. Delay compresses the time to review records, identify further requests and witnesses, and complete discovery before March 15, 2027. Dkt. 31 at 2 ¶ 7. A definite schedule permits that planning. Ex. F, pp. 37–38, 45–47; Blair Decl. ¶¶ 4–5. Seven and twenty-one days are requested remedies, not agreed dates or estimates based on a known review volume. If specific remaining work warrants more time, Plaintiff requests reasonable request-specific completion dates while retaining prompt production of ready material. Continuing supplementation would remain required after completion of the work covered by the order.

34. Plaintiff requests the relief specified above and recoverable expenses under Rule 37(a)(5), subject to its requirements, exceptions, and an opportunity to be heard. If relief is mixed, Rule 37(a)(5)(C) governs allocation. No compensation for Plaintiff's own legal work is requested. Standalone interrogatory and search-methodology disputes are outside this motion. The earlier E410A version and related policy-history, adoption, and metadata issues are reserved for the October 17 conferral process. Ex. F, pp. 55–62. If further conferral is needed on a discrete issue, Plaintiff requests resolution of adequately conferred issues and focused conferral on the remainder.

## CONFERENCE CERTIFICATION

35. I conferred in good faith with Richard G. Garza on September 1, 2026 about supplementation, production timing, and my August 8 and August 11 letters. The August 8 letter asked whether production commitments were complete and requested dates for outstanding production. Ex. C04, Record pp. 29–31. My follow-up and Garza's September 3 proposal confirm the timing discussion. Ex. F, pp. 25–27; Ex. C11, Record pp. 39–40. I declined Garza's proposed agreement as written on September 3, and answered the

clarification questions September 5. Ex. F, pp. 29–30, 33; Ex. C14, Record pp. 43–46. I conferred with Garza and Dyana K. Mardon on October 1 and October 15. October 1 produced an October 6 supplementation commitment, but no agreed completion date for communications review. On October 15, despite my repeated requests, counsel would not commit to a completion date. Ex. F, pp. 37–40, 45–47; Blair Decl. ¶¶ 4–5. The timing relief for the ten RFPs in paragraphs 13–22 addresses that common issue.

36. On October 15, we separately discussed Inc. RFPs 1–2. I explained their relevance to ownership rights and employment authority. Inc. offered reconsideration of RFP 1 without a date and maintained its responses and objections to RFP 2. Ex. F, pp. 44–45; Ex. C23, Record pp. 65–66; Blair Decl. ¶ 6. The relief sought is limited to completion timing and the stated governance objections and production.

37. I requested corrections to my October 15 account, definite next steps and dates, and identification of unopposed relief by October 19 at 5 p.m. Central. Ex. F, pp. 45–47. Mardon addressed overlapping timing and governance subjects at 3:50 p.m. in the separate search-coverage thread. I acknowledged her explanations and conditional commitment at 5:04 p.m., identifying the ten communications RFPs and Inc. RFPs 1–2. At 5:25 p.m., she disputed my characterization and reiterated an intended end-of-October supplemental production with possible later supplementation. Ex. F, pp. 69–70, 75–76, 82. I credit that installment target. These exchanges supplied no final completion schedule or clarification of governance withholding and established no agreement on the requested relief. I rely on the previously conferred disputes, not the passing of 5 p.m. or silence. Blair Decl. ¶ 7.

Dated: October 19, 2026

Respectfully submitted,

/s/ Ronald A. Blair
Ronald A. Blair
2725 Woodall Drive, Unit 1804
Cedar Park, TX 78613
717-808-4671
r.anthony.blair@gmail.com

Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, I electronically filed the foregoing motion and its supporting documents with the Clerk using CM/ECF, which served notice on counsel of record registered to receive electronic service.

/s/ Ronald A. Blair
Ronald A. Blair
Plaintiff, Pro Se